**Robert E. LAWRIE, Plaintiff-Respondent,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.**

**No. 28108.**

Missouri Court of Appeals,
Kansas City District.

Aug. 8, 1977.

Motion for Rehearing and/or Transfer
Denied Aug. 29, 1977.

R. Lawrence Ward, John R. Caslavka, Shughart, Thomson & Kilroy, Kansas City, for defendant-appellant.

James C. Wirken, Welch & Austin, Kansas City, for plaintiff-respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from grant of a new trial to plaintiff after adverse verdict in his action for commissions on insurance sales as an agent of defendant. The question is whether Instruction 4, given at the request of defendant, was an improper converse instruction as determined by the trial court. Affirmed.

Plaintiff pleaded that on or about June 16, 1966, he and defendant entered into an agreement under which he was to receive a commission of five per cent of the total premium earned and received by defendant on insurance policies of group health, accident, and medical insurance if he sold said insurance to Local Union 1464, International Brotherhood of Electrical Workers in Kansas City, Missouri; that defendant agreed to pay such commissions so long as said policies were maintained by defendant or replacements of said policies were in force; that he sold said policies, effective December 1, 1966; that defendant paid his commissions through June 30, 1968, and failed, neglected and refused to pay said commissions after June 30, 1968, and until termination of the coverage September 30, 1972, thus breaking its contract with plaintiff.

Defendant answered that the agreement was not a vested commission agreement but to pay plaintiff commissions only so long as he remained the designated agent of Local 1464 and defendant remained the carrier, and that the five per cent flat rate commission obtained only through the initial contract period and not beyond June 30, 1968.

Robert E. Lawrie had been in the insurance sales and service business since 1939 and had operated an independent agency since 1946. In the course of his business he became acquainted with William James, Business Manager for Local 1464, IBEW, and in May, 1966, had a discussion with Mr. James regarding a group health, accident, and medical insurance plan for members of IBEW 1464. As a result of such discussion, Mr. Lawrie communicated with a number of insurance companies regarding such business. He obtained bids from them and prepared a chart of such bids for comparison by IBEW 1464. Mr. Lawrie communicated with Thomas Eubeler concerning the proposal of Continental Casualty Company.

Mr. Lawrie and Mr. Eubeler discussed the commission to be paid to Mr. Lawrie if Continental were chosen as the insurance carrier. The commission under discussion was five per cent. Mr. Lawrie asked Mr. Eubeler to put the agreement to pay a "five percent flat commission in writing." Continental was chosen as the insurance carrier by IBEW 1464 and, on June 16, 1966, Mr. Eubeler wrote Mr. Lawrie and confirmed the commitment for a five per cent flat commission on the policy sold to IBEW 1464.

On July 11, 1966, Mr. Eubeler wrote Mr. Lawrie concerning the policy and confirmed the agreement to pay Mr. Lawrie a flat five

per cent commission "as long as you are agent on the case and we are the carrier." Upon receipt of this letter, Mr. Lawrie called Mr. Eubeler to state it was not in accordance with the agreement on commissions and Mr. Eubeler told him to ignore the letter. Mr. Eubeler denied such discussion.

All bids sought by Mr. Lawrie were to figure a flat five per cent commission which was higher than the standard commission on this type and size policy. Mr. Eubeler advised Mr. Lawrie that a flat five per cent commission would increase the insured's premium cost.

IBEW 1464 accepted Continental's bid effective December 1, 1966. Mr. Lawrie and Continental entered into an agreement effective the same date which specified a five per cent flat commission to be paid to Mr. Lawrie. A written agreement signed February 14, 1967, by Mr. Lawrie, and February 23, 1967, by Continental, provided for a termination on June 30, 1968. Mr. Lawrie recognized the differences between his agreement with Mr. Eubeler and the written agreement, and signed it in reliance upon representations of Mr. Eubeler that he was just supposed to sign the agreement and that Mr. Eubeler would take care later of the five per cent flat commission through the policy and renewal periods. Mr. Eubeler said, "Just trust me." Mr. Eubeler denied this discussion.

Mr. James wrote Mr. Eubeler December 13, 1966, and stated the understanding of IBEW 1464, "that, in accordance with your letter of June 16, 1966 to Mr. Lawrie, the commission is to be a 5% flat rate. It is our intention to limit this commission to the initial contract period and is not to be paid beyond June 30, 1968."

On January 3, 1967, Mr. Eubeler, on behalf of Continental, wrote Mr. Lawrie to "confirm the contractual agreement to pay you . . . a flat 5% commission on the . . . Local 1464 case IBEW . . . as long as we maintain the current policy being issued or its replacement in force. . . . My letter of June 16, 1966 shall serve as the basis of a contractual agree-

ment, no further written agreement being deemed necessary."

On February 3, 1967, Mr. Eubeler wrote Mr. Paul Rings, President, Blue Hills Bank of Commerce, to "reconfirm our agreement to Mr. Lawrie to assign commissions payable [on the IBEW 1464 policy]. . . . we have agreed to pay Mr. Lawrie . . five per cent of the earned premium for the period December 1, 1966, to June 30, 1968. . . . "

On March 30, 1967, following delivery of the written agreement on March 1, 1967, Mr. Eubeler again wrote Mr. Lawrie to "confirm our agreement to pay to you or your assigns 5% commissions on the premiums as received by us. . . . The commissions due commence 1st December, 1966 and will be continuous."

Mr. Lawrie was paid his commissions from December 1, 1966, through June 30, 1968, at a rate of five per cent of the total premium dollars. A new policy was negotiated between IBEW 1464 and Continental beginning July 1, 1968. Mr. Lawrie did not participate in the negotiations. Continental maintained group coverage for IBEW 1464 until September 30, 1972.

Between July 1, 1968, and September 30, 1972, Continental earned $1,665,767.86 in premiums from IBEW 1464. Five per cent of that amount, or $83,288.90, together with interest, was claimed by Mr. Lawrie.

Plaintiff's claim was submitted by Instruction 3:

"Your verdict must be for plaintiff if you believe:

"First, defendant agreed to pay plaintiff a commission of 5% of the monthly earned premiums on the Continental Casualty Company policies issued to Local 1464 for so long as the initial policies or renewals thereof remained in force, and

"Second, the initial Continental Casualty Company policies or renewals thereof remained in force from December 1, 1966 to September 30, 1972, and

"Third, defendant failed to pay plaintiff a commission of 5% of the monthly premiums earned after June 30, 1968, and

"Fourth, plaintiff was thereby damaged."

Defendant offered and the court gave Instruction 4:

"Your verdict must be for defendant if you believe that plaintiff was not entitled to commissions after June 30, 1968. M.A.I. 33.05."

The jury found for defendant. Plaintiff moved for a new trial, asserting that Instruction 4 was erroneous because: It failed to converse any element submitted in plaintiff's verdict-directing instruction; it constituted a roving commission to the jury to determine a question of law, i. e., whether plaintiff was entitled to commissions after June 30, 1968; and it was confusing and misleading.

The court sustained the motion for new trial without specifying a ground on which the new trial was granted. See Rules 78.03 and 84.05(b), V.A.M.R.

The issue on this appeal is whether Instruction 4 was a proper converse instruction under MAI 33.05.

Instruction 4 is in the form of MAI 33.05 in that it begins "Your verdict must be for defendant if you believe . . . ." *Sheets v. Dakota Iron Store*, 442 S.W.2d 953 (Mo.App.1969). This is known as the "third method" converse and the quoted language is to be "followed by a hypothesized *ultimate issue* which, if true, would defeat plaintiff's claim." See General Comment at MAI 33.01, p. 351.

The difficulty with Instruction 4 is that it lacks the required hypothesis. *Oliver v. Bi-State Dev. Agency*, 494 S.W.2d 49 (Mo. 1973). The pleadings, the evidence, and the verdict-directing instruction, No. 3, demonstrate that the ultimate issue was whether there was an agreement between Mr. Lawrie and Continental for Continental to pay him commissions on insurance in force after June 30, 1968. Instruction No. 3 permitted a conclusion limited to that hypothesis of fact. An MAI 33.05 converse to fit this situation might well have read: "Your verdict must be for defendant if you believe defendant did not agree to pay commissions after June 30, 1968," or "Your verdict must be for defendant if you believe there was no agreement between plaintiff and defendant for payment of commissions after June 30, 1968." Instead, the jury was permitted the ultimate conclusion whether plaintiff was "entitled" to commissions after June 30, 1968, without defining "entitled" and without limiting entitlement to a hypothesis which would defeat plaintiff's claim. This permitted the jury a roving commission to conclude that plaintiff was not entitled to such commissions for any reason upon which they might agree. "Entitled" is a broad and conclusive word with various meanings, such as designated, qualified, authorized, and enabled. Webster's Second and Third New International Dictionaries; Roget's Thesaurus of the English Language. In the context here used, it could have suggested to the jury that plaintiff had somehow to show he was worthy to receive the commission he sought.

Judgment affirmed and cause remanded.

All concur.